## STANTON *v.* STANTON.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE—SUFFICIENCY.
   Evidence *held*, sufficient to show that plaintiff was entitled to a divorce from her husband on the ground of cruelty, where he had accused her of immoral relations with other men at a time when she was afflicted with tuberculosis.

2. SAME—EXTREME CRUELTY—CONDONATION OF OFFENSE—RENEWED BY SUBSEQUENT ACTS.
   Acts of cruelty of a husband towards his wife which have been condoned are renewed by a subsequent act of cruelty.

3. SAME—EQUITY—JUDICATURE ACT—ACCOUNTING.
   A court of equity has power, upon granting a divorce, to adjust the property rights of the parties and to compel an accounting by the husband of money of the wife in his hands, under Act No. 314, chap. 8, § 1, Pub. Acts 1915 (3 Comp. Laws 1915, § 12309), providing that a plaintiff may join in one action, at law or in equity, as many causes of action as he may have against the defendant.

4. APPEAL AND ERROR—QUESTIONS NOT RAISED BY APPEAL.
   The question of the power of a court of equity to adjust property rights of divorced persons on granting a divorce
   197—Mich.—11.

and to compel an accounting by the husband, cannot be reviewed on appeal where no objection was made in the trial court.

5. DIVORCE—ALIMONY—SETTLEMENT OF DECREE.

  Where it appeared that the husband and wife, parties to a divorce suit, owned a homestead worth $3,200 jointly; that the wife had $3,750 in bank certificates, $1,000 of which the husband placed in his own name while the wife was away and the balance in their joint names without authority, and that the husband personally owned property worth $4,300, a decree ordering $2,500 of the wife's money to be repaid her, and awarding her the homestead and furniture as permanent alimony, was proper.[1]

Appeal from Van Buren; Tucker, J., presiding. Submitted April 19, 1917. (Docket No. 117.) Decided July 26, 1917.

Bill by Myrtle E. Stanton against Lee W. Stanton for a divorce, alimony and an accounting. From a decree for plaintiff, defendant appeals. Affirmed.

*Earl L. Burhans* and *David Anderson*, for plaintiff.

*Thomas J. Cavanaugh*, for defendant.

KUHN, C. J. The bill filed in this case prays for a divorce and alimony, and incidentally an accounting involving dealings between the parties.

The parties were married on April 6, 1894. The plaintiff's father at the time of the marriage bought a 40-acre farm for them, paying $1,700 therefor, and took the deed in the names of the parties hereto as husband and wife, making them a present of $1,000 of the purchase price and leaving a mortgage of $700 upon the property. This farm has been the home of

---

[1]For authorities discussing the question of charges of adultery as grounds for divorce, see notes in 18 L. R. A. 300; 34 L. R. A. (N. S.) 360.

On effect of decree of divorce on homestead rights, see notes in 23 L. R. A. 239; 16 L. R. A. (N. S.) 114.

the parties during the whole of their married life. As they were thrifty, they soon paid off the $700 mortgage, and the husband bought 30 acres more and also received a 5-acre parcel from his father's farm, and bought out two other 5-acre parcels from other heirs of his father. At the time of the trial of this controversy he owned the 30 acres before referred to, which the court held were worth $1,200, the 15 acres of his father's, worth $1,100, and the parties owned the 40-acre farm jointly, which the court held to be worth $3,200, and the court also found that the husband owned personal property aside from any belongings of his wife to the value of $2,000. The plaintiff's father died on December 28, 1911, and she received money at various times from his estate, so that in February, 1914, she had $3,753.24 on deposit in certificates in various banks. The parties have three children, the eldest being a daughter aged 20 years at the time of the trial, a daughter named Velma, aged 6, and a son, Mark L., aged 3 years.

The record is convincing that the defendant is a hard-working, sober and industrious man, but it also discloses that there was more or less friction and unpleasantness during the whole of their married life. It appears that the defendant was of a jealous disposition, and that in 1912 he accused the plaintiff of infidelity with the minister of the church which they attended and openly stated that one of his children was not his child. Mrs. Stanton became afflicted with tuberculosis, and desired to go to Arizona to seek restoration of her health. There was some dispute between them over this contemplated trip, but the husband finally consented, and the plaintiff started for Arizona on February 18, 1914, and returned about May, 1915. While she was there the defendant paid her two visits, one in June, 1914, and the second time in May, 1915, when he brought her back home with him. During

the last trip the defendant secured possession of the certificates of deposit; Mrs. Stanton having indorsed them to her husband in order that he might be able to renew them and collect the interest on them. It is her claim that it was the express understanding that he would renew them in her own name and return them to her. Instead of doing this, he renewed them mostly in the joint names of himself and wife, and placed $1,000 thereof in his own name. After her return she was anxious to get hold of these certificates, and this led to further controversy. She continued to grow worse, and finally, in September, 1915, she went to a tuberculosis hospital in Kalamazoo, where she was at the time the bill was filed, and remained up to the time of the trial.

The learned circuit judge who heard the case made a decree granting the plaintiff an absolute divorce and disposing of their property matters as follows: He ordered $2,500 of her own money to be returned to her, and awarded her the homestead held by them jointly and the furniture in the home as permanent alimony. The custody of the children was temporarily provided for, the expense to be borne by the parties equally, and their final disposition was reserved for future determination.

Counsel for the appellant says there are three questions here for determination:

"(1) Is plaintiff entitled to a decree of divorce?

"(2) Did the court have jurisdiction to dispose of the property in the manner indicated by the decree?

"(3) If so, was the court justified in awarding the plaintiff the amount of alimony indicated and especially in taking from the defendant the home in which he and the children were living at the time of the decree?"

This record presents a most unfortunate situation, and it is to be sincerely regretted that they cannot live together. The question that confronts us, however, is

whether there was adequate proof to entitle the plaintiff to a decree of divorce. Upon this we agree with the trial judge. Granting that the defendant was left at home with his children in an unfortunate situation, it must also be borne in mind that the wife, suffering from a dreaded and wasting disease, was far from her home, among strangers, looking for encouragement and consolation from those at home. Instead of receiving it, defendant wrote her a letter which the trial judge characterized—

"* * * the most brutal letter I have ever heard read, hinting that she was at the time and while in Arizona unduly intimate with men. So far as this case shows, there was no possible foundation for any such hint or charge."

Counsel seek to palliate this offense by saying that defendant was nervous, and that he was worried over the large expenditure of money which her stay there necessitated. But this does not, in our opinion, justify such a course of conduct, nor does it justify his making the charge of her intimacy with the minister on the occasion of the visit of the sheriff of the county to their home after their return from the west. This act of cruelty on his part renewed the original acts of a similar character which plaintiff may have condoned. See *Eistedt* v. *Eistedt,* 187 Mich. 371 (153 N. W. 676).

We are also of the opinion that the court, by virtue of section 1, chap. 8 of the judicature act (Act No. 314 of the Public Acts of 1915, 3 Comp. Laws 1915, § 12309), had the power to adjust the property matters and the accounting in the divorce proceedings; proper allegations having been made in the bill. It also appears that no objection was made on this ground on the trial below nor upon the settlement of the decree, and the question was not raised until the brief was filed in this court. See *Jeup* v. *State Fire Marshal,* 182 Mich. 231 (148 N. W. 340).

We also agree with the findings of the circuit judge as to alimony and the accounting. Considering the amount of property she contributed and the money in her own name when she left for the west, we think the award made by the trial judge is fair and equitable.

The decree of the court below is affirmed, with costs to the appellee.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.