GILCHRIST *v.* GILCHRIST.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE.
   Trial court's finding that plaintiff husband had sustained his burden of proof as to claimed extreme cruelty because of constant nagging and accusations of improper conduct with another married woman *held*, sustained by testimony of plaintiff himself even though wife disputed material facts contained therein.

2. SAME—UNCORROBORATED TESTIMONY OF A PARTY.
   A trial judge who hears the testimony in a suit for divorce may believe one party even if such party's testimony is not corroborated by that of third persons, provided the party's testimony is credible and clearly establishes the right to relief.

3. SAME—CREDIBILITY OF WITNESSES.
   Trial court's discrediting of testimony of neighbors of married woman with whom defendant wife had accused plaintiff husband of having been on intimate terms and which accusations were one of the bases for his suit for divorce *held*, justified under record presented, where trial judge felt neighborhood grudges were involved.

4. WITNESSES—HEARSAY—IMPEACHMENT.
   Refusal of trial court in suit for divorce to allow plaintiff husband's witnesses to answer questions embracing hearsay testimony on cross-examination was not prejudicial error, where, even if answered in the affirmative, they would not have had the effect of impeaching the credibility of the witness.

REFERENCES FOR POINTS IN HEADNOTES
[2] 17 Am Jur, Divorce and Separation § 403.
[2] Character and sufficiency of evidence required to corroborate testimony of plaintiff in divorce suit. 65 ALR 169.
[5, 6, 8] 58 Am Jur, Witnesses §§ 767, 768, 773, 784.

(275)

5. SAME—IMPEACHMENT.
   A witness may be impeached by exhibiting the improbabilities of his story on cross-examination by showing conduct or statements inconsistent with his testimony.

6. SAME—IMPEACHMENT—HEARSAY.
   Impeaching testimony by hearsay admissions is governed by strict rules as to relevancy, and ought not to be received unless clearly competent.

7. EVIDENCE—DISAVOWAL OF KNOWLEDGE—REPETITIOUS QUESTIONS.
   Repetitious questions after disavowal of knowledge may properly be excluded by the trial court.

8. WITNESSES—IMPEACHMENT—IRRELEVANT TESTIMONY.
   Objection to questions put to plaintiff husband's witness in suit for divorce on cross-examination as to his own marital troubles were properly sustained, where they were irrelevant as impeaching testimony.

9. APPEAL AND ERROR—DIVORCE—SEPARATE RECORD—IMPEACHMENT.
   Exclusion of impeachment evidence in suit for divorce did not result in reversible error, where, notwithstanding trial judge excluded it because of public policy in that it involved a previous divorce suit between 2 of plaintiff husband's witnesses, and such ground does not afford justification for exclusion, defendant did not show materiality and relevancy of such testimony by way of separate record and was not denied an opportunity of making a separate record (CL 1948, § 617.5; Court Rule No 66, § 7 [1945]).

Appeal from Genesee; Bishop (Clifford A.), J. Submitted January 17, 1952. (Docket No. 95, Calendar No. 44,868.) Decided April 8, 1952.

Bill by John V. Gilchrist against Freda C. Gilchrist for divorce on ground of extreme cruelty. Decree for plaintiff. Defendant appeals. Affirmed.

*Frank G. Millard,* for plaintiff.

*Joseph & Joseph,* for defendant.

BUTZEL, J. Plaintiff John V. Gilchrist obtained a decree of divorce from his wife Freda Gilchrist, de-

fendant, on the ground of extreme cruelty, consisting of continued nagging and false accusations by defendant of his improper association with other women. No question is raised as to the property settlement as decreed by the trial court. Defendant appeals, claiming that the decree is not sustained by the evidence and, further, that the trial court erred in excluding alleged declarations made by certain witnesses on cross-examination for the purpose of impeaching their testimony.

While the term "extreme cruelty" has never been defined by this Court so as to cover all situations, we have repeatedly held that it may consist of constant nagging or accusations and reproaches of improper conduct of a serious nature, and particularly of improper relations with persons of the opposite sex. *Stanton* v. *Stanton,* 197 Mich 161; *Clark* v. *Clark,* 199 Mich 282; *Mitchell* v. *Mitchell,* 237 Mich 631; *Pinchuk* v. *Pinchuk,* 317 Mich 523; *Mark* v. *Mark,* 319 Mich 258; and *LeBel* v. *LeBel,* 327 Mich 318. In the instant case the real substantial testimony as to defendant's constant nagging and false accusations came from plaintiff himself. Defendant acknowledged in her answer to the bill of complaint that she had complained to plaintiff's employer in regard to such relations. The trial judge who hears the testimony may believe one party even if such testimony is not corroborated by that of third persons provided the party's testimony is credible and clearly establishes the right to relief. *Murphy* v. *Murphy,* 150 Mich 97; *Allen* v. *Allen,* 188 Mich 532; *Brookhouse* v. *Brookhouse,* 286 Mich 151; *Kolberg* v. *Kolberg,* 312 Mich 42. Such false accusations of the nature involved occur most frequently when third parties are not present.

Defendant sought to justify her accusations by testimony in regard to a Mrs. X with whom she alleged plaintiff had been intimate for approximately a year

before the parties were separated and also after the separation. The parties had been married many years and had grown up children. There is no question but that plaintiff had enjoyed an intimate friendship with both Mr. and Mrs. X, Mr. X being present at all times. Defendant claims that she did not indulge in continuous nagging but admitted that after she discovered plaintiff's improper association with Mrs. X in January of 1948, that Mrs. X became the subject of many disputes. She testified that plaintiff's frequent absence from home and other circumstances may have caused her suspicions. Her own conduct may have made the home unpleasant and caused plaintiff to frequently visit the home of Mr. and Mrs. X where he was always a welcome guest. Defendant also introduced the testimony of some neighbors of the X family to prove the continued association of plaintiff and Mrs. X. The trial court to a large extent discredited the credibility of these witnesses because of his feeling that neighborhood grudges were involved and also the inconsistency of some of the testimony. The record justifies the trial court's conclusion in this respect.

The crucial testimony was that of Mr. and Mrs. X, whom plaintiff called as rebuttal witnesses. Each testified that Mrs. X's relationship with plaintiff was a friendly and proper one that arose out of plaintiff's friendship with Mr. X. He and Mr. X both worked at the Chevrolet plant and rode back and forth together to their work. Mr. and Mrs. X categorically denied any improper intimacy with plaintiff either before or after the separation of the parties.

Testimony was adduced on behalf of both parties concerning alleged trips Mrs. X and plaintiff took together, of instances when plaintiff and Mrs. X had been seen publicly together; plaintiff's friendship with a nurse at the Chevrolet plant; and defendant's

general conduct toward plaintiff. It will serve no useful purpose to review this testimony in detail. The trial court heard and saw the witnesses at firsthand and we are reluctant to disturb its findings, notwithstanding the fact that defendant disputes material facts contained therein.

During the cross-examination of Mrs. X, the following questions were asked:

"*Q.* Do you remember making a remark to Mrs. Harris to the effect—

"*Mr. Millard:* Don't answer this question.

"*Mr. Joseph:* (continuing the question)

"*Q.* 'Have you heard the gossip about me in the neighborhood since you got back?' * * *

"*Q.* Did you make the statement to Mrs. Harris at that time that you were having the best time of your life?'"

The court held that neither of these questions should be answered as the answer would be hearsay. Counsel for defendant, Mr. Joseph, then questioned Mrs. X as follows:

"*Q.* Did Mrs. Smith discuss with you * * * the reasons for the absence of (Mr. X) from your home during the summer of 1949? * * *

"*A.* No, I never discussed it with Mrs. Smith.

"*Mr. Joseph:*

"*Q.* You never talked to Mrs. Smith?

"*A.* No.

"*Q.* Did you ever tell Mrs. Smith your husband was working up north during weekends?

"*Mr. Millard:* Just a moment, I object to that.

"*The Court:* That is the same ruling I had on the other one."

Defendant alleges that the refusal of the court to allow these 3 questions, about statements made by Mrs. X out of court to be answered, was prejudicial error.

The questions concerning witness' conversation with Mrs. Harris were not proper as they would not have had the effect, even if answered in the affirmative, of impeaching the credibility of the witness. A witness may be impeached by exhibiting the improbabilities of his story on cross-examination by showing conduct or statements inconsistent with his testimony. *Shannon* v. *Jamestown Township,* 251 Mich 597. However, impeaching testimony by hearsay admissions is governed by strict rules as to relevancy, and ought not to be received unless clearly competent. *Howard* v. *Patrick,* 43 Mich 121; *McClellan* v. *Fort Wayne & Belle Isle R. Co.,* 105 Mich 101. No matter what answer the witness gave to the 2 questions, it could not operate to impeach her testimony as it would be in no way inconsistent with her previous testimony. It was, therefore, not competent and the court was correct in sustaining the objection.

The question "Did you ever tell Mrs. Smith your husband was working up north during weekends" was improper as it followed the witness' denial that she had ever discussed the subject of her husband's absence from the home with Mrs. Smith. Repetitious questions after disavowal of knowledge may properly be excluded by the trial court. *Michigan Air Line Railway* v. *Barnes,* 44 Mich 222; *Evans* v. *Montgomery,* 95 Mich 497; *Wayne Probate Judge, for use and benefit of Voss,* v. *Budnick,* 266 Mich 209.

During the cross-examination of Mr. X, he was asked if he and his wife had had difficulties in the past, if his wife had filed a divorce against him, and if he ever made an allegation to the Friend of the Court to the effect that another man was breaking up his home. The court ruled that such a line of questioning was improper, on the grounds of public policy. The objection was properly sustained, for the reasons we have just discussed in regard to relevancy of impeaching testimony. The questions, even

if answered affirmatively, were not shown to be relevant. There was no showing on the record that the man of whom Mr. X allegedly spoke could be identified as plaintiff, or that the X's marital difficulties had been caused by plaintiff. The X bill of divorce was filed by Mrs. X, not by Mr. X.

To impeach Mrs. X's statement that Mr. X had not left her alone since Easter of 1949, counsel sought to introduce a bill of complaint sworn to by Mrs. X in a divorce action against Mr. X, said action having been later dismissed and the parties reconciled. More specifically, counsel wished to offer only 1 paragraph of the bill. The court was shown the controversial paragraph and made the statement "from reading this 1 paragraph, I can see now where some of your witnesses got the idea about repair work," evidently referring to the previous testimony of certain of defendant's witnesses that Mrs. X had been left alone several weekends during the summer of 1949 while Mr. X did repair work on a cottage up north. The court then without passing on relevancy held as follows:

*"The Court:* \* \* \* If you want to go in and try this other divorce case over again you are liable to make another rupture of a family relationship. I don't think, on the grounds of public policy, I should allow it. \* \* \*

*"Mr. Joseph:* And the court holds I can't impeach her by the allegation in paragraph (b) of her bill of complaint?

*"The Court:* I don't; on the grounds of public policy, and I don't want that divorce gone into.

*"Mr. Joseph:* Being case number —

*"The Court:* It being stipulated it be dismissed, and they are reconciled and they are taking care of the children."

We are not convinced that a consideration of public policy alone would be sufficient in this situation

to justify exclusion of the bill of complaint. If the questions are material, the court cannot as a rule exclude them on the grounds of public policy. However, the trial judge has a great deal of discretion in limiting cross-examination, and his discretion is not subject to review unless a clear abuse thereof is shown to exist. Defendant has not given us enough proof that we can so hold. Notwithstanding the fact that the court may have erred in excluding the paragraph of the bill of complaint, defendant did not offer the bill of complaint as an exhibit as she might have and then have it excluded, nor did she ask that a special record be made in regard to the bill of complaint or as to other questions that were excluded. It was defendant's right and duty if she cared to preserve questions for appeal not only to offer the bill of complaint as an exhibit but also to make a special record in regard to any other material facts, if there were any, that might be relevant. The divorce bill might have been material for impeachment purposes. This we do not know. We have nothing before us to show what the answer would be, even if it had been given in regard to material and relevant matters. In *Kerns* v. *Kerns*, 303 Mich 23, we quoted with approval from *Counihan* v. *Hayes*, 246 Mich 390, where we said:

"Counsel should have taken such testimony under the provisions of CL 1915, § 12493,* or at least have asked the court for leave to do so. It was not sufficient to state upon the record what the testimony would show and then rely upon an exception to its exclusion. Had the practice been followed we would now have such testimony, and, if material and competent, could use it. One purpose of the statute is to prevent hearing chancery appeals piecemeal, and we decline to reverse the decree for the reason men-

---

* CL 1948, § 617.5 (Stat Ann § 27.853).—Reporter.

tioned, and to remand the case to take further evidence."

Also, see *Gross* v. *Housner,* 322 Mich 448, page 455. Also, see Court Rule No 66, § 7 (1945).

Defendant made no effort to make a special record, nor was she denied the opportunity to make one. Under the circumstances, defendant is not in a position to claim error in regard to materiality or relevancy of testimony of which no special record was made.

We find no error in the proceedings below. Decree is affirmed, without costs.

NORTH, C. J., and DETHMERS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.