HOWARD v KOWALSKI

Docket No. 297066. Submitted October 5, 2011, at Grand Rapids. Decided May 29, 2012, at 9:05 a.m. Amended, 296 Mich App 801. Leave to appeal sought.

Joedeanna Howard filed an action in the Wexford Circuit Court against Robert F. Kowalski, M.D., Trinity Health-Michigan, doing business as Mercy Hospital, and others, claiming that her decedent, Barbara Johnson, passed away because of Kowalski's negligent medical treatment in the emergency room. Johnson had been bitten in the face by one of her mares while assisting in the birth of a foal. Kowalski assessed and treated Johnson in the emergency room and requested the assistance of an anesthesiologist and an ear, nose, and throat (ENT) specialist to help manage her airway. Johnson was initially relatively stable, then experienced problems breathing after Kowalski had been called away for another emergency. The anesthesiologist, Dr. Charles Urse, and the ENT performed a cricothyroidotomy to ventilate her lungs directly, but Johnson suffered a cardiac arrest, resulting in permanent brain damage and her ultimate death. Plaintiff's theory of the case was that Urse was not present and assistance was not summoned until after Johnson's condition deteriorated suddenly and that Kowalski had negligently failed to intubate Johnson before being called away and leaving Johnson unattended. The court, William M. Fagerman, J., denied plaintiff's request to admit an affidavit of a nonparty doctor-witness (Urse) for impeachment purposes, concluding that it was hearsay, and excluded presuit correspondence, including e-mails, concerning the affidavit between plaintiff's attorney and a representative of Urse's insurer, but allowed plaintiff's counsel to refer to the affidavit during his opening statement and cross-examine Urse regarding its content, and argue during closing that it showed the defense's case was fabricated. Following the trial, the jury returned a verdict of no cause of action and plaintiff appealed.

The Court of Appeals *held*:

1. Under MRE 613(b), a prior inconsistent statement of a witness is admissible to impeach the credibility of the witness. The rule excluding hearsay, MRE 802, does not apply to the admission of a prior inconsistent statement because it is not offered as

substantive evidence to prove the truth of the matter asserted, MRE 801(c), but is only offered to test the credibility of the witness's testimony in court.

2. The party seeking to impeach a witness with a prior inconsistent statement must lay a foundation by establishing that the witness made the prior statement and that the prior statement was inconsistent with the witness's in-court testimony. A statement is inconsistent if there is any material variance between the testimony and the previous statement, that is, if a jury could reasonably find that a witness who believed the truth of the facts testified to would be unlikely to make the prior statement. Evidence is not collateral, and is thus admissible for impeachment purposes, if the fact on which the prior self-contradiction was predicated could have been shown in evidence for any purpose independently of the self-contradiction. The circuit court correctly allowed the jury to decide the issue of whether the affidavit was inconsistent with Urse's testimony but erred by refusing to admit the document itself into evidence. The affidavit was not collateral and should have been admitted because it detailed Urse's activities leading up to Johnson's deterioration independently of its tendency to impeach him.

3. Logical relevance is the foundation for admissibility. Under MRE 401, evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. MRE 402 provides that all relevant evidence is admissible except as otherwise provided. When the relevancy of evidence depends on the fulfillment of a condition of fact, the evidence must be admitted upon or subject to the introduction of evidence sufficient to support a finding of the fulfillment of the condition. Under MRE 104(b), a court must examine all the evidence in the case and decide whether the jury could reasonably find the conditional fact by a preponderance of the evidence. The credibility of a witness is almost always relevant because the jury is entitled to all evidence that might bear on the accuracy and truth of a witness's testimony. The circuit court erred by excluding the e-mails between plaintiff's counsel and Urse's insurance claims representative. The evidence was relevant because it could be read as explaining the affidavit's contents and why it was inconsistent with Urse's trial testimony. The evidence was sufficient to allow a reasonable jury to find the conditional fact and conclude that Urse's testimony differed markedly from his affidavit. The error was not harmless because the improperly excluded

evidence might have affected the jury's determination regarding the credibility of Urse, who was a critical witness.

Reversed and remanded for further proceedings.

1. EVIDENCE — IMPEACHMENT — PRIOR INCONSISTENT STATEMENTS.

Under MRE 613(b), a prior inconsistent statement of a witness is admissible to impeach the credibility of the witness; the rule excluding hearsay, MRE 802, does not apply to the admission of a prior inconsistent statement because it is not offered as substantive evidence to prove the truth of the matter asserted, MRE 801(c), but is only offered to test the credibility of the witness's testimony in court; the party seeking to impeach a witness with a prior inconsistent statement must lay a foundation under MRE 613(b) by establishing that the witness made the prior statement and that the prior statement was inconsistent with the witness's in-court testimony; a statement is inconsistent if there is any material variance between the testimony and the previous statement, that is, if a jury could reasonably find that a witness who believed the truth of the facts testified to would have been unlikely to make the prior statement; evidence is not collateral, and is thus admissible for impeachment purposes, if the fact on which the prior self-contradiction was predicated could have been shown in evidence for any purpose independently of the self-contradiction.

2. EVIDENCE — RELEVANCE — CONDITION OF FACT.

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence; all relevant evidence is admissible unless otherwise provided, but when the relevancy of evidence depends on the fulfillment of a condition of fact, the evidence must be admitted upon or subject to the introduction of evidence sufficient to support a finding of the fulfillment of the condition; a court must examine all the evidence in the case and decide whether the jury could reasonably find the conditional fact by a preponderance of the evidence (MRE 104[b], 401, 402).

*Allan Falk, P.C.* (by *Allan Falk*), and *Weiner & Associates, P.C.* (by *Cyril V. Weiner*), for Joedeanna Howard.

*Plunkett Cooney* (by *Robert G. Kamenec*) for Robert F. Kowalski, M.D.

Before: MARKEY, P.J., and SERVITTO and RONAYNE
KRAUSE, JJ.

PER CURIAM. Plaintiff appeals by right a judgment of
no cause of action in this medical malpractice case,
asserting that certain evidentiary rulings resulted in
the denial of a fair trial. Specifically, plaintiff contends
that the trial court abused its discretion by not admit-
ting as an exhibit for impeachment purposes an affida-
vit of a nonparty doctor-witness and by excluding
presuit correspondence concerning the affidavit be-
tween plaintiff's attorney and a representative of the
witness's insurer. We conclude the trial court abused its
discretion and that the error was not harmless. We
reverse and remand.

## I. FACTUAL BACKGROUND

Plaintiff's decedent, Barbara Johnson, a horse owner,
was severely bitten in the face by one of her mares while
assisting in the birth of a foal. Although the bite resulted
in deep gashes below her right eye and along her jaw that
caused heavy bleeding, Mrs. Johnson managed to call for
an ambulance and also called her daughter. The decedent
was transported to the emergency room (ER) of the
defendant hospital, arriving at about 2:38 p.m., according
to the emergency medical services report. Defendant,
Robert F. Kowalski, M.D., the physician on duty in the ER
at the time, assessed Mrs. Johnson at about 2:45 p.m.,
finding that she was alert and oriented. There was bleed-
ing into her mouth, but her airway was open and being
maintained by the suctioning of blood as needed.

Dr. Kowalski testified that between 2:50 and 2:52
p.m., he requested the assistance of an ENT[1] and

---

[1] A doctor specializing in the treatment of the ear, nose, and throat is
an ENT or otolaryngologist.

ananesthesiologist "STAT" to help manage Mrs.
Johnson's airway and that a medical helicopter be
summoned to transport her to a larger hospital with
better trauma treatment capability. Dr. Charles Urse,
an anesthesiologist, responded, and shortly thereafter
Dr. Lisa Jacobson, an ENT specialist, also responded to
the "STAT" call for assistance. Both Drs. Kowalski and
Urse testified in their pretrial depositions and at trial
that Mrs. Johnson had been relatively stable when they
were at her bedside discussing the best medical proce-
dure to maintain the patency of her airway. About 3:00
p.m., Dr. Kowalski was called away to another emer-
gency room patient who had gone into cardiac arrest.
Thereafter, at about 3:05 p.m., Mrs. Johnson began
having more serious difficulty breathing, crying out
that she could not breathe. Dr. Urse administered
medications and attempted to orally intubate Mrs.
Johnson, but the amount of blood in her mouth and
throat made it impossible. Dr. Urse, with Dr. Jacobson's
assistance, performed a cricothyroidotomy to ventilate
the patient's lungs by inserting breathing tubes directly
through her throat. The procedure was only partially
successful, and Mrs. Johnson suffered a cardiac arrest.
She was resuscitated and placed on life support, but she
had sustained permanent brain damage. Five days later,
she was removed from life support and died.

Plaintiff's theory of the case was that when Dr.
Kowalski left Mrs. Johnson to attend the other patient,
Dr. Urse was not present and assistance was not sum-
moned until after Mrs. Johnson's condition suddenly
deteriorated. Plaintiff contended that Dr. Kowalski was
negligent by failing to immediately intubate Mrs.
Johnson before being called away to the other patient
and leaving Mrs. Johnson unattended. According to
plaintiff's theory, Dr. Urse had not arrived until after
the patient's fatal deterioration began at about 3:05

p.m. Dr. Urse then took steps to intubate Mrs. Johnson, but blood in her mouth and throat prevented him from completing the procedure. Dr. Urse then performed a cricothyroidotomy with Dr. Jacobson's assistance. This too was not completely successful because Mrs. Johnson went into cardiac arrest and suffered loss of oxygen to the brain. Plaintiff's counsel formed this theory of the case during the presuit notice-of-intent period, MCL 600.2912b, apparently on the basis of his review of the medical records.

Plaintiff's counsel named Dr. Urse as a potential defendant in plaintiff's notice of intent, MCL 600.2912b, but did not name him in the complaint. On July 26, 2007, counsel wrote to Nancy A. Croze, a claims representative for Dr. Urse's liability insurer, American Physicians Assurance Corporation, advising her that on the basis of his understanding of the facts, Dr. Kowalski bore sole responsibility for the medical accident. After setting forth his understanding of the facts of the case, plaintiff's counsel indicated that he was planning to file a lawsuit only against Dr. Kowalski, assuming that his information was accurate. Counsel stated in his letter that he needed "some kind of verification perhaps in the form of an affidavit by Dr. Urse" that would confirm his understanding of the facts and that counsel "could draft such an affidavit."

Following the July 26, 2007, letter and other communications with plaintiff's counsel, which included e-mails, Croze wrote to counsel on August 15, 2007, enclosing Dr. Urse's August 9, 2007, affidavit. Croze stated in her letter: "I am confident that this document will meet your needs as you assess your intentions for pursuit of the case."

In pertinent part, two paragraphs of the affidavit stated:

4. I was contacted, by beeper or through the [operating room] front desk staff (I can't recall completely which one) in regards to a STAT ER page on patient Barbara Johnson on the afternoon of April 4, 2005. Then I immediately proceeded to the [post anesthesia care unit] to obtain the anesthesia department airway box, and then immediately proceeded to the Emergency Room, arriving within approximately two to three minutes after I was notified.

5. That my findings and treatment are summarized in my hand-written progress note contained in the medical record.

At trial and in his deposition 18 months earlier, Dr. Urse testified contrary to plaintiff's theory of the case that he was, in fact, at Mrs. Johnson's bedside discussing treatment options with Dr. Kowalski while the patient was stable and before Dr. Kowalski was called away. Dr. Urse further testified that his one-page progress note did not include the events preceding the patient's acute deterioration and that he signed his affidavit believing that the information desired was the time frame it took for him to arrive at the ER after receiving the stat page. He testified that he never saw the correspondence between plaintiff's counsel and Croze.

Two weeks before trial, the trial court heard and granted defendants' motion for a protective order regarding plaintiff's effort to subpoena Croze and her file. During the hearing, the court suggested, without deciding, that the Urse affidavit could arguably be used at trial as a prior inconsistent statement to impeach Dr. Urse's testimony.

On the first day of trial, after a jury had been selected and sworn, plaintiff's counsel sought a ruling from the court on the admissibility and use of Dr. Urse's affidavit and the correspondence between plaintiff's counsel and Croze. Counsel argued that plaintiff's "whole case

rest[ed] upon the medical records which contradict the testimony" of Drs. Urse and Kowalski that they were both present with Mrs. Johnson before the onset of fatal respiratory distress. Plaintiff's counsel agreed that use of the affidavit would be limited to impeaching the anticipated trial testimony of Dr. Urse and that the letters were intended only to provide context for the affidavit. With respect to the letters, the court ruled that it would not permit reference to them in opening statements but would not preclude their use at trial "if a proper foundation is laid" that Dr. Urse "in fact reviewed those letters and was in some way endorsing the facts that are contained therein at the time he executed the affidavit." Regarding the affidavit, the court ruled that it was hearsay and could not be used until Dr. Urse testified in a contrary manner. Nonetheless, defense counsel did not object to plaintiff's counsel's request to refer to the affidavit in his opening statement, without showing it, by saying "that [Dr. Urse] signed something which I believe is contrary to his testimony." In his opening statement, plaintiff's counsel stated:

> Now let's look at Dr. Urse who I believe you will see changed his position regarding what happened just like Dr. Kowalski did. Dr. Urse signed an affidavit when this lawsuit—before this lawsuit was filed and didn't say anything about being on the scene with Dr. Kowalski. We wanted to know, we have read the records, we want to know before the lawsuit; you weren't there, were you, Dr. Urse? He made no mention of having been there in his affidavit.

> \* \* \*

> Again, Dr. Kowalski will testify contrary to the evidence in the chart that Dr. Urse, and Dr. Urse will change his testimony. When I say change, I mean he gave an affidavit before the case started, not mentioning this meeting [be-

tween Dr. Urse and Dr. Kowalski] that supposedly occurred between 2:45 and 3:00. Dr. Urse will change his testimony . . . . And such testimony of Kowalski and Urse must be false or the record and Nurse Joel and everything we know about this case is wrong. There is no in between. . . . Dr. Urse will say he was in the room, and he was in the room with Dr. Kowalski until Dr. Kowalski was called out.

The affidavit signed by Dr. Urse indicates nothing about him being in the room with Dr. Kowalski. Nothing. And we specifically inquired that question, that's what we wanted to know, who was in the room between 2:45 and 3:00. And we felt with that affidavit, that he had verified he was not initially in the room, but he testified in deposition contrary to that.

Dr. Urse testified at trial as discussed already. When asked, Dr. Urse recalled having signed his affidavit and he brought a copy to the trial. When plaintiff's counsel sought to display the affidavit to the jury, defense counsel objected that it was hearsay. Plaintiff argued that it was a prior inconsistent statement. The trial court suggested that counsel needed to lay a better foundation. When plaintiff's counsel asked Dr. Urse if his one-page progress note reflected the treatment he provided, Urse answered, "Yeah, it's a summary of events that occurred starting when she started to have respiratory distress" and "a summary of what had occurred that I thought was important." Dr. Urse identified a copy of the affidavit, identified his signature, and agreed that the affidavit was a notarized statement given under oath. Dr. Urse was asked to and read aloud ¶ 4 of the affidavit. At this point, the trial court suggested that the affidavit be marked, and it was marked as Exhibit 17. In an effort to establish the affidavit as a prior inconsistent statement, plaintiff's counsel asked Dr. Urse about ¶ 5 of the affidavit and about the content of his progress note. Counsel moved

for the admission of Exhibit 17, but the trial court ruled that it had not heard any testimony from Dr. Urse that was inconsistent with his affidavit.

On further cross-examination, Dr. Urse acknowledged that his progress note did not state all that he had done or all that occurred and that he had not thought it important to indicate that he had conferred with Dr. Kowalski regarding treatment options. He also admitted that he reviewed plaintiff's notice of intent and that he talked to a "legal representative" before signing the affidavit. But Dr. Urse denied ever seeing the correspondence at issue and explained that "I thought that when I filled out the affidavit, that you were asking me about when I got contacted and how long it took me to get down to the ER, that was my understanding, and that's what I wrote." Plaintiff's counsel noted that he did not ask that the affidavit be prepared, to which Dr. Urse replied, "[T]hat's what my legal representative said and I read it and I said that is what happened and I signed it."

The trial court ruled as follows regarding Exhibit 17:

> All right. To move this matter along, I'm going to rule that proposed 17 will not be received. I'm not precluding you from asking questions to the witness. I think you have done so, [plaintiff's counsel]. I do believe, however, that Dr. Urse read the portion that you referred him to somewhat meekly and it was difficult for me to hear and a couple of jurors were trying to get my attention while he was doing so. So for that reason, I will allow you to ask that question again. But that's going to be the Court's ruling as to the admissibility of 17.

After the trial court's ruling, plaintiff's counsel was allowed to require Dr. Urse to again read into the record ¶ 5 of his affidavit, which states: "That my findings and treatment are summarized in my hand-written progress note contained in the medical record."

Near the close of the proofs, plaintiff's counsel again sought to admit as rebuttal exhibits Dr. Urse's affidavit, counsel's July 26, 2007, letter, and Croze's August 15, 2007, letter. The trial court reasoned that there was no evidence that Dr. Urse knew of the letters or that he was responding in the affidavit to what plaintiff's counsel thought the facts were at the time he wrote his letter. The trial court also noted that the content of the affidavit was not contrary to Dr. Urse's testimony, either at trial or in his deposition. Therefore, the trial court ruled:

> The Court will stick with its prior ruling as it relates to Proposed Exhibit 17. The statement has been used for the extent that it was able to for purposes of impeachment. MRE 613 permits that and I permitted you to do that.

> \* \* \*

> The plaintiffs have had an adequate opportunity to cross examine Dr. Urse, to lead him as it was put, because he was adverse to them, and the Court was lenient with that, as well as [defense counsel] did not object frequently as it relates to that. That was all part of the plaintiff's case in chief, and I'm not going to permit that testimony to be offered, and I will deny the request.

When queried by plaintiff's counsel regarding referring to the affidavit in his closing argument, the trial court advised:

> It's part of the record. You can argue it. You can argue that he provided an affidavit, that his findings and treatment are summarized in the handwritten progress notes contained in medical records. He told you, members of the jury, that he signed an affidavit to that effect, and you can argue that those medical records are the true story and that what he said from the stand is not the true story, and that will be for the fact finder to agree or disagree with you.

Following the trial court's advice, and as he did in his opening statement, plaintiff's counsel argued that the defense in this case was fabricated, that Dr. Urse's affidavit indicated that there was no meeting between Dr. Urse and Dr. Kowalski, and that Dr. Urse did not come to Mrs. Johnson's room between 2:53 and 3:00 p.m. as the two doctors testified.

The trial court instructed the jury regarding a prior inconsistent statement of a witness according to M Civ JI 3.15 as follows:

> If you decide that a witness said something earlier that is not consistent with what the witness said at trial, you may consider the earlier statement in deciding whether to believe the witness, but you may not consider it as proof of the facts in this case; however, there are exceptions. You may consider an earlier statement as proof of facts in this case if the statement was made by plaintiff, defendant, or an agent or employee of either party; the statement was given under oath subject to the penalty of perjury in a deposition; or the witness testified during the trial that the earlier statement was true.

As noted already, the jury returned a verdict of no cause of action. Plaintiff now appeals by right.

## II. STANDARD OF REVIEW

A trial court's decision regarding the admission or exclusion of evidence will not be disturbed on appeal absent an abuse of discretion. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). But questions of law underlying a trial court's evidentiary decision, such as the construction of a constitutional provision, rule of evidence, court rule, or statute, are reviewed de novo. *Barnett v Hidalgo*, 478 Mich 151, 159; 732 NW2d 472 (2007); *Waknin v Chamberlain*, 467 Mich 329, 332; 653 NW2d 176 (2002). Even if a trial court's decision

regarding the admission or exclusion of evidence is an abuse of discretion because it is outside the range of principled outcomes, reversal is not warranted unless a substantial right of a party is affected, MRE 103(a), or it affirmatively appears that failure to grant relief is inconsistent with substantial justice, MCR 2.613(A). *Lewis v LeGrow*, 258 Mich App 175, 200; 670 NW2d 675 (2003).

### III. ANALYSIS

Plaintiff argues that the trial court abused its discretion by not admitting Dr. Urse's affidavit in evidence as Exhibit 17. Plaintiff further argues that the trial court abused its discretion by failing to admit the letters exchanged between plaintiff's counsel and the insurance claims representative, Croze. Plaintiff contends that when read together, the contents of the documents diverge from the testimony of the witness and therefore constitute prior inconsistent statements. Because they are inconsistent, plaintiff argues, the trial court should have admitted them for impeachment purposes.[2] We agree.

### A. THE TRIAL COURT ERRED BY EXCLUDING THE AFFIDAVIT

The trial court's ruling on the affidavit was ambiguous at best. MRE 613(b) provides:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an

---

[2] We note that MRE 411 plays no role in this decision. MRE 411 does not preclude evidence of liability insurance if introduced for relevant reasons other than proving that a person acted negligently or otherwise wrongfully. Dr. Urse is not a party to this action. The communications between plaintiff's counsel and the claims representative for Dr. Urse's insurer are admissible because they bear on Dr. Urse's credibility as a witness, not on his conduct on the day in question.

opportunity to explain or deny the same and the opposite
party is afforded an opportunity to interrogate the witness
thereon, or the interests of justice otherwise require. This
provision does not apply to admissions of a party-opponent
as defined in Rule 801(d)(2).

MRE 613(b) recognizes that a prior inconsistent
statement of a witness is admissible to impeach the
credibility of the witness. *Merrow v Bofferding*, 458
Mich 617, 631; 581 NW2d 696 (1998); *Gilchrist v
Gilchrist*, 333 Mich 275, 280; 52 NW2d 531 (1952). If
admitted, a prior inconsistent statement of a witness is
not regarded as coming within the rule excluding hear-
say, MRE 802, because it is not offered as substantive
evidence to prove the truth of the matter asserted, MRE
801(c), but is only offered to test the credibility of the
witness's testimony in court. *Merrow*, 458 Mich at 631;
*People v Steele*, 283 Mich App 472, 487; 769 NW2d 256
(2009). But a party seeking to impeach a witness with a
prior inconsistent statement must satisfy the founda-
tional criteria provided in MRE 613(b). *Barnett*, 478
Mich at 165; *People v Jenkins*, 450 Mich 249, 256; 537
NW2d 828 (1995). One criterion for admissibility of a
prior inconsistent statement, not disputed here, is that
the witness actually made the prior statement. *Merrow*,
458 Mich at 631-632. Another criterion for admissibility
of a prior inconsistent statement under MRE 613 is that
the prior out-of-court statement of the witness was in
fact inconsistent with the witness's testimony in court.
*Barnett*, 478 Mich at 165; *Gilchrist*, 333 Mich at 280.

The Michigan Rules of Evidence do not expressly
prescribe a test for inconsistency. McCormick, Evidence
(6th ed) § 34, pp 151-152 sets forth the prevailing view:

Under the more widely accepted view, any material
variance between the testimony and the previous state-
ment suffices. The pretrial statement need "only bend in a
different direction" than the trial testimony. For instance,

if the prior statement omits a material fact presently testified to, which it would have been natural to mention in the prior statement, the statement is sufficiently inconsistent. The test ought to be: Could the jury reasonably find that a witness who believed the truth of the facts testified to would be unlikely to make a prior statement of this tenor? [Citations omitted.]

In this case, the trial court twice—once when plaintiff moved to admit the affidavit during her case-in-chief and once when counsel proffered the affidavit as rebuttal evidence—stated its belief that Dr. Urse's affidavit was not inconsistent with his trial testimony. If that were so, the affidavit would be irrelevant to the witness's credibility and inadmissible hearsay for any other purpose. Consequently, if indeed there were no inconsistency between the affidavit and Dr. Urse's testimony, neither the affidavit nor its contents should have been admitted.

Nonetheless, the trial court obviously determined that even if the court did not, a reasonable jury might indeed perceive an inconsistency. The trial court allowed plaintiff's counsel the opportunity to cross-examine the witness on the affidavit. The trial court actually allowed the witness to read the affidavit to the jury, which, of course, is the same as admitting it. *People v Rodgers*, 388 Mich 513, 519; 201 NW2d 621 (1972). In reaching the decision to admit the contents of the affidavit by means of its being read, but not the document itself, the trial court stated on the record its belief that MRE 613 applied: "The [affidavit] has been used for the extent it was able to for purposes of impeachment. MRE 613 permits that and I permitted you to do that." Thereafter, the trial court allowed plaintiff's counsel to discuss the contents of the "inadmissible" affidavit during closing argument. Finally, the trial

court actually instructed the jury regarding prior inconsistent statements. M Civ JI 3.15.

The only conclusion to be drawn is that the trial court determined that although the court was not convinced, a jury could reasonably find that the affidavit was in fact inconsistent with the witness' testimony, and the court left it for the jury to decide. In this sense, the court's decision was correct. But unless the affidavit were to be deemed collateral, the court clearly erred by refusing to admit the document itself.

The contents of the affidavit were clearly not about a collateral issue. As the trial court itself acknowledged, plaintiff's entire theory of the case was premised on the fact that the affidavit and medical records told the "true story" and that Dr. Urse "changed his position regarding what happened."

In *Osberry v Watters*, 7 Mich App 258, 262; 151 NW2d 372 (1967), the Court adopted Professor Wigmore's test to determine what extrinsic evidence is admissible for impeachment purposes:

> The test to determine whether contradictory evidence may be introduced is stated by Wigmore:

> "Could the fact, as to which the prior self-contradiction is predicated, have been shown in evidence for any purpose independently of the self-contradiction?" 3 Wigmore, Evidence (3d ed), § 1020, p 692, citing *People* v. *DeFrance*, 104 Mich 563 [62 NW 709 (1895)].

The facts contained in the affidavit that set forth Dr. Urse's activities leading up to Mrs. Johnson's rapid deterioration, independently of their tendency to impeach the witness, are relevant to the case. Not only "could" they "have been shown in evidence," they were shown in evidence by both parties to the suit. The affidavit was not collateral and therefore should have been admitted.

Of course, if our ruling ended here, the failure to admit the actual document would be harmless inasmuch as the trial court allowed the contents of the affidavit into evidence, allowed plaintiff's counsel to discuss its contents during closing argument, and instructed the jury to consider whether the affidavit contradicted Dr. Urse's testimony. The more difficult question involves the e-mail between plaintiff's counsel and the claims representative, Croze.

### B. THE TRIAL COURT ERRED BY EXCLUDING EVIDENCE OF THE E-MAIL

With respect to the e-mail, the question presented is a simple one of logical relevance. Logical relevance is the foundation for admissibility. *People v VanderVliet*, 444 Mich 52, 60-61; 508 NW2d 114 (1993). Logical relevance is defined by MRE 401 and MRE 402.

As defined by MRE 401, "relevant evidence" is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible."

Plaintiff sought to impeach the credibility of Dr. Urse not only by introducing Dr. Urse's own prior and arguably inconsistent statement (the affidavit), but also by introducing communications between plaintiff's counsel and Croze for Dr. Urse's insurer. Plaintiff contends that the credibility of Dr. Urse's testimony can only be properly judged by viewing it in context. In effect, plaintiff argues, the e-mail explains the affida-

vit's contents and why they are inconsistent with Dr. Urse's trial testimony. If Dr. Urse was aware of the substance of the e-mail exchanged between Croze and plaintiff's counsel, the jury might have concluded that the phrasing of the affidavit was a deliberate attempt to obfuscate the central issue of the case. Similarly, even if Dr. Urse was unaware of the e-mail exchange, if the affidavit was nonetheless prepared by his insurer and he signed it at his insurer's direction, his testimony, while honest, might nonetheless lack credibility because the witness himself was misled and therefore the accuracy of both his affidavit and his trial testimony are suspect.

In a trial, the credibility of a witness is almost always relevant. *People v Layher*, 464 Mich 756, 761-764; 631 NW2d 281 (2001), citing with approval *United States v Abel*, 469 US 45; 105 S Ct 465; 83 L Ed 2d 450 (1984). The jury, as the finder of fact and judge of credibility, "has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *Abel*, 469 US at 52. Moreover, inasmuch as the questions posed to Dr. Urse arose during cross-examination, "[t]here is 'a general canon that on cross-examination the *range* of evidence that may be elicited for any purpose of discrediting is to be *very liberal*.'" *Wilson v Stilwill*, 411 Mich 587, 599; 309 NW2d 898 (1981), quoting 3A Wigmore, Evidence (Chadbourn rev), § 944, p 778.

Thus any evidence that Dr. Urse knew the contents of the e-mail, or was himself misled by his insurer, is clearly relevant and admissible to impeach his trial testimony. On this score, we have here a classic case of "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact . . . ." MRE 104(b). In such a case, "the court shall admit [the evidence] upon,

or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." *Id.* The e-mail exchanged between Croze and plaintiff's counsel are relevant for the reasons set forth earlier, but only if Dr. Urse was aware of the e-mail, or if not, was kept in the dark by his insurer.

It appears from the record that the trial court found "no evidence" that Dr. Urse knew of the e-mail. But the court apparently erred by deciding the question under subpart (a) of MRE 104, and not according to subpart (b). The standard for screening evidence under subpart (b) is quite low.

MRE 104(b) is identical to its federal counterpart. In *VanderVliet*, 444 Mich at 68, our Supreme Court, in deciding the applicable standard for MRE 104(b), specifically adopted the United States Supreme Court's holding in *Huddleston v United States*, 485 US 681; 108 S Ct 1496; 99 L Ed 2d 771 (1988). In *Huddleston*, the government had charged the defendant with receiving stolen property and attempted to introduce evidence, pursuant to FRE 404(b), that the defendant had in the past received stolen television sets. The defendant denied *ever having dealt with stolen* television sets. Quoting *Huddleston*, our Supreme Court held:

> "[Q]uestions of relevance conditioned on a fact are dealt with under Federal Rule of Evidence 104(b) . . . . In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact—here, that the televisions were stolen—by a preponderance of the evidence.

*       *       *

"We emphasize that in assessing the sufficiency of the evidence under Rule 104(b), the trial court must consider all evidence presented to the jury. '[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts.' *Bourjaily v United States*, 483 US 171, 179-180 [107 S Ct 2775; 97 L Ed 2d 144] (1987)." [*VanderVliet*, 444 Mich at 69 n 20, quoting *Huddleston*, 485 US at 688-691.]

As stated, as long as some rational jury could resolve the issue in favor of admissibility, the court must let the jury weigh the disputed facts. Specifically, the court must allow the jurors to assess the credibility of the evidence presented by the parties.

The sum of the evidentiary presentation in this case could lead a rational jury to find that Dr. Urse, either wittingly or unwittingly, participated in an effort to "sandbag" the plaintiff. It is impossible to ignore the timing and the substance of the e-mail between plaintiff's counsel and Croze.

As noted, plaintiff's counsel named Dr. Urse as a potential defendant in plaintiff's notice of intent, MCL 600.2912b. But on July 26, 2007, counsel wrote Croze and indicated that on the basis of his reading of the medical records, Dr. Kowalski bore sole responsibility for the medical accident because Dr. Kowalski failed to summon Dr. Urse in a timely fashion. After setting forth his understanding of the facts of the case, an understanding he gleaned from the medical records, plaintiff's counsel indicated that he was planning to file a lawsuit only against Dr. Kowalski, *assuming that his information was accurate*. Counsel stated in his letter that he needed *"some kind of verification perhaps in the form of an affidavit by Dr. Urse"* that would confirm his understanding of the facts and that counsel "could draft such an affidavit." (Emphasis added.)

Dr. Urse testified that he was shown the plaintiff's notice of intent, together with the proposed affidavit by a "legal representative." He then signed the affidavit.

On August 15, 2007, Croze sent the affidavit to plaintiff's counsel with the disarming note stating, "*I am confident that this document will meet your needs as you assess your intentions for pursuit of the case.*" (Emphasis added.)

When viewed together, the sum of this evidence is sufficient to allow a reasonable jury to conclude that Dr. Urse's trial testimony differed markedly from his affidavit.

### C. THE TRIAL COURT'S ERRORS WERE NOT HARMLESS

Because the improperly excluded evidence may have affected the jury's determination regarding the credibility of Dr. Urse, a critical witness, the error cannot be considered harmless. See *Powell v St John Hosp*, 241 Mich App 64, 72-75; 614 NW2d 666 (2000).

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff may tax costs under MCR 7.219 as the prevailing party.

MARKEY, P.J., and SERVITTO and RONAYNE KRAUSE, JJ., concurred.