# STATE OF MICHIGAN

# COURT OF APPEALS

TEREES WILLIAMS,

Plaintiff-Appellant,

v

JERVISS-FEHTKE INSURANCE CO,

Defendant-Appellee.

UNPUBLISHED
September 29, 2015

No. 323434
Muskegon Circuit Court
LC No. 13-49185-CK

Before: BOONSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

Plaintiff appeals by right, *in propria persona*, from the judgment entered in defendant's favor following a directed verdict granted to defendant after the close of proofs at a jury trial. The trial court denied plaintiff's motion for reconsideration of its directed verdict and subsequently entered a judgment of no cause of action on plaintiff's claims. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff's rental property was destroyed by a gas explosion that originated at a neighboring house. Plaintiff submitted a claim to her insurer, Auto-Owners Insurance Company ("Auto-Owners"). Auto-Owners denied the claim on the grounds that the policy did not cover losses arising from explosions originating outside the property.

Plaintiff then filed this action *in propria persona* against Auto-Owners and defendant insurance agency. Plaintiff's complaint, although styled a "breach of contract" complaint, alleged primarily that Kevin Dick, an insurance agent and employee of defendant, was negligent in failing to provide the type of insurance coverage plaintiff had requested. Plaintiff also alleged deficiencies in Auto-Owners's denial of coverage. The trial court granted summary disposition to Auto-Owners and dismissed the claims against it; plaintiff did not appeal that dismissal.

The case proceeded with respect to plaintiff's allegations against defendant. Prior to trial, the trial court granted defendant's motion in limine to exclude evidence that plaintiff wished to present regarding payments made by another insurer on a claim by another property owner for damage to a different property that had allegedly been damaged in the same explosion. The trial court also excluded documentary evidence related to Auto-Owners's denial of coverage for plaintiff's loss on the grounds that it was not relevant to plaintiff's claim.

-1-

At trial, plaintiff testified that she had telephoned defendant's office in April of 2012 seeking a quote for insurance on several rental properties she owned in Muskegon. Plaintiff spoke to Dick, and provided him with the addresses of her rental properties. Plaintiff also told Dick that she had previously had an Auto-Owners policy. Plaintiff testified that they scheduled an appointment to discuss quotes for insurance policies on April 9, 2012.

Plaintiff testified that she told Dick at the meeting that she wanted "full coverage" for her rental properties. Plaintiff further testified that she told Dick that the property that is the subject of the instant case ("the property") was her only rental property that was subject to a mortgage. Plaintiff testified that Dick responded by explaining "replacement cost" insurance to her; according to plaintiff, Dick told her that even if she received a "replacement cost" policy, if she suffered a total loss she would not receive the replacement cost of the property, but only the market value. Plaintiff testified that she requested "full coverage insurance up to the value of the home" and clarified that she would be fine with using the state equalized value (SEV) of the home. Plaintiff stated that Dick said he wasn't sure if it was possible, but that he would check with the underwriter regarding that coverage. Plaintiff testified that Dick told her that if it was possible to receive the coverage she requested, she would receive a policy in the mail; if not, Dick would contact her to discuss other options. She testified that she received a policy in the mail for the property in the amount of $50,000 a few weeks later. She testified that she looked it over and that it appeared to be the coverage she had requested. Plaintiff testified that her understanding of "full coverage" was a policy that would insure against all losses regardless of their cause.

Dick testified that his initial telephone call with plaintiff lasted approximately 15 minutes and that he gathered the information from plaintiff necessary to begin a "policy shell or a client shell" in his company's computer system. Dick also testified that a second telephone conversation took place between the initial call and the April 9 meeting, and that during one of these calls he told plaintiff that "full coverage" home insurance policies did not exist. During the second call, Dick testified, he told plaintiff that, based on his preliminary calculations, if a "replacement cost" policy was available, he estimated that it would cost about $9,500 per year. Dick stated that plaintiff said that amount was much more than plaintiff had paid in the past. Dick testified that he had doubts about his ability to even obtain a "replacement cost" policy based on the large discrepancy between the market value of the property and its replacement cost, although the record is unclear whether he communicated these doubts to plaintiff during the telephone call.

Dick testified that, during the second call, he explained to plaintiff that the highest level of coverage available for a non-owner-occupied property was the "replacement cost" policy they had discussed earlier. According to Dick's calculations, the replacement cost for the property was over $150,000; if plaintiff had obtained that policy, she would receive that amount for a covered total loss. Dick denied telling her that a "replacement cost" policy would only pay the actual market value in the event of a total loss. Dick testified that plaintiff stated that she did not want to pay that much for a policy even if it was available, and that he told her that the only other option was a "dwelling fire policy based on actual cash value." Based on his belief that plaintiff did not want to try to obtain a "replacement cost" policy, Dick did not contact underwriters to see if such a policy was available.

Dick testified that, at the April 9 meeting, plaintiff provided him with the SEV's of the properties she wanted insured, and they discussed obtaining "dwelling fire" policies for those properties. Dick testified that he told plaintiff that a "dwelling fire" policy provided less coverage than a "replacement cost" policy. Dick denied telling her that he would speak to an underwriter concerning "full coverage" and telling her that if he could get her the coverage she requested she would receive a policy in the mail; instead, Dick said that if the underwriters had any concerns regarding potential repairs to the property he would contact her. Dick testified in fact that the underwriters did contact him, following an inspection of the property, about some repairs they wanted made to the property. He contacted plaintiff about these concerns; plaintiff made the repairs and kept the policies that had been issued.

Defendant presented an expert witness, David Walker, as an expert in the sale of residential insurance policies by independent agents. Walker testified that, in 2012, three types of insurance policies were available for residential properties: "homeowners," "replacement cost," and "dwelling fire." Walker testified that a "homeowners" policy was not available to plaintiff because she was not occupying the property as the owner. Walker explained further that a "replacement cost" policy was only available if "the replacement cost was within a reasonable margin to the market value." Walker opined that no insurance company in 2012 would have issued a "replacement cost" policy for a property with a market value of $50,000 and a replacement cost of over $150,000 because of the "moral hazard" such policies represented. Therefore, Walker opined that the only type of policy available to plaintiff for the property was a "dwelling fire" policy for the market value of the property. Such a policy only insures for specific perils specifically identified in the policy—as contrasted to a "replacement cost" policy, which insures against all perils not specifically excluded. Walker testified that plaintiff's policy stated that it covered "internal" explosions. Walker stated that based on the information he had concerning the property, he could not identify any policy that plaintiff could have obtained for the property that would have protected from damage caused by an external explosion.

Following Walker's testimony, defendant moved for a directed verdict, on the grounds that the evidence indicated that it would have been impossible for Dick to have obtained an insurance policy for plaintiff that would have covered the loss. The trial court granted the motion on proximate causation grounds, finding that, regardless of whether Dick was negligent in procuring an insurance policy for plaintiff, there was no evidence that any negligence on Dick's part resulted in damages to plaintiff.

This appeal followed. On appeal, plaintiff challenges the trial court's exclusion of evidence, as well as its entry of a directed verdict.

## II. EXCLUSION OF EVIDENCE

Plaintiff argues that the trial court erred in excluding evidence that the insurer of another home paid a claim related to the explosion, and also in excluding evidence related to Auto-Owners's denial of her claim. We disagree. We review a trial court's decision regarding the admission of evidence for an abuse of discretion. See *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). We review issues involving the interpretation of the Michigan Rules of Evidence de novo. *Howard v Kowalski*, 296 Mich App 664, 675; 823 NW2d 302 (2012). Even

if evidence was erroneously excluded, reversal is not required unless the error was prejudicial. *Shaw v Ecorse*, 283 Mich App 1, 27; 770 NW2d 31 (2009).

Regarding Auto-Owners, plaintiff sought to admit a letter from Auto-Owners's claims adjuster denying her claim, a forensics engineering report prepared for Auto-Owners detailing damages to the property, and a letter from Auto-Owners to the credit union mortgagee of the property indicating that its claim was denied because of a lack of coverage on the property. Plaintiff argued before the trial court that the denial letter to her supported her claim that she had received a different insurance policy than she had requested in her conversations with Dick. Plaintiff further argued that the engineering report supported her claim of damages, and that the denial letter sent to her credit union showed "a pattern of negligence" by Dick because he allegedly had forgotten to add the mortgagee to the policy.

The trial court denied the admission of the denial letters and engineering report on both relevance and hearsay grounds. MRE 402, MRE 802. With regard to hearsay, the trial court noted that no foundation had been provided for any of the correspondence or the report, so as to bring them within the hearsay exception found in MRE 803(6), the "business records" exception. We agree. MRE 803(6) requires that the party seeking admission lay a foundation by providing evidence that the records were prepared in the course of a regularly conducted business activity. See *Price v Long Realty, Inc.*, 199 Mich App 461, 468; 502 NW2d 337 (1993).[1] Plaintiff did not provide such evidence by either testimony or affidavit.

With regard to relevance, the trial court noted that it was undisputed that plaintiff had suffered a total loss and that Auto-Owners had denied her claim. Thus, the evidence plaintiff sought to admit was not relevant. We agree. Plaintiff's evidence regarding Auto Owners's denial of her claim would not have been helpful in shedding light on any material fact at issue. MRE 401; *Dep't of Transp v VanElslander*, 460 Mich 127, 129; 594 NW2d 841 (1999). Further, even if plaintiff's evidence was minimally relevant, its admission would have been a needless presentation of cumulative evidence. MRE 403; *Taylor v Mobley*, 279 Mich App 309, 315; 760 NW2d 234 (2008). Finally, as the trial court noted, admission of this evidence risked a confusion of the issues and misleading the jury, by potentially inviting the jury to consider anew the issue of whether Auto-Owners had properly denied her claim. *Id.* In addition, with regard to plaintiff's claim that the denial letter received by the mortgagee indicated a "pattern of negligence" on the part of Dick, the record reflects that the mortgagee was retroactively added to the policy, that plaintiff had failed to complete the portion of the application indicating the presence of a lienholder on the property, and that the mortgagee's claim was denied for the same reason plaintiff's claim was denied—the policy did not cover the peril that caused the loss. Under these circumstances, the trial court did not err in concluding that the evidence was not relevant. MRE 401.

---

[1] The trial court noted its doubt that the engineering report and denial letters would even qualify as "records prepared in the course of a regularly conducted business activity." In light of the fact that we agree that in any event the proffered evidence lacked sufficient foundation and was irrelevant, we do not address this additional concern.

With regard to the evidence that another insurer had paid a claim on a different rental property related to the explosion, the trial court also excluded that evidence on the basis of hearsay and lack of relevance. Plaintiff sought to admit documents from the City of Muskegon indicating that the insurer of a neighboring property was required to withhold a portion of insurance proceeds from any insurance settlement and to remit that amount to the City, and additionally a copy of the check from the insurer remitting that amount. Although plaintiff argued that an affidavit of the Freedom of Information Act (FOIA) Coordinator for the City of Muskegon sufficed to provide a foundation for this evidence under MRE 803(6), the trial court found that the affidavit "essentially says this is our file and she's completely unqualified to say whether the thing that's in their file is accurate."

The trial court properly excluded this evidence. Although the FOIA coordinator's affidavit indicated that the documents as a whole were kept in the regular course of business, that is not the end of the inquiry; "not every statement contained within [a] document is admissible merely because the document as a whole is one kept in the regular course of business." *Merrow v Bofferding*, 458 Mich 617, 625; 581 NW2d 696 (1998). Rather, when hearsay exists within a business record, a separate exception must exist for its admission. *Id.* Here, plaintiff offered these documents to prove the truth of the matter asserted that the owner of another *rental* property received insurance payments from damage caused by an *external* explosion. The documents offered to prove this assertion are a September 11, 2012 application for registration of the damaged property as a non-owner occupied rental dwelling, and a check from Fremont Insurance remitted to the City of Muskegon that states that the claim type was "EXPLOSION." Plaintiff offered no hearsay exception or foundational testimony to support her position that (1) the insured property was in fact a non-owner occupied rental property at the time of the explosion or (2) that Fremont Insurance paid for damages caused by an external explosion. We therefore conclude that the trial court did not err in declining to admit this hearsay within hearsay.

Further, even if there was no hearsay problem, admission of this evidence, without additional evidence, ran the risk of misleading the jury. *Taylor v Mobley*, 279 Mich App at 315. The evidence offered by plaintiff did not indicate the type of insurance policy in place on the neighboring property or the details surrounding the payment of that particular claim. Without more evidence to support it, this evidence would have merely invited the jury to speculate that plaintiff could have obtained a "dwelling fire" policy, in 2012, covering the property at issue, that would have covered an external explosion. The trial court thus did not abuse its discretion in declining to admit this evidence on relevancy grounds. MRE 403.

In her reply brief on appeal, plaintiff argues that her evidence was admissible under the "residual" exception to the hearsay rule, MRE 803(24). The application of this exception was not argued to the trial court and the issue is thus unpreserved. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). In any event, the residual exception "is to be employed only in extraordinary circumstances where the court is satisfied that the evidence offers guarantees of trustworthiness and is material, probative, and necessary in the interest of justice." *People v Katt*, 248 Mich App 282, 300-301; 639 NW2d 815 (2001). In light of the relevancy issues and lack of foundational testimony discussed above, we find no error in the trial court's failure to sua sponte admit plaintiff's proffered evidence under this exception to the hearsay rule.

## III. DIRECTED VERDICT

Plaintiff also argues that the trial court erred in granting defendant's motion for a directed verdict. We disagree. We review a trial court's decision on a directed verdict motion de novo. *Tobin v Providence Hosp*, 244 Mich App 626, 642; 624 NW2d 548 (2001).

In deciding a directed verdict motion, the trial court must view the evidence and all legitimate inferences from the evidence in the light most favorable to the nonmoving party to determine whether it has established a prima facie case. *Chouman v Home-Owners Ins Co*, 293 Mich App 434, 441; 810 NW2d 88 (2011). If no factual question exists upon which reasonable minds could differ, the trial court may grant a directed verdict. *Id.*

To establish a prima facie case of negligence, a plaintiff must show proof of all of the following elements: "that '(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages.' " *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660; 822 NW2d 190 (2012), quoting *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011).

Here, the trial court stated that it was granting defendant's motion for a directed verdict on the grounds that no factual question existed regarding the absence of proof of proximate causation:

> Let's suppose the jurors believe -- let's assume that Mr. Dick was negligent, he did a horrible job? What would have changed? And in terms of the damage, your loss might be your opportunity to shop around and we don't have any way the jurors could put a number on that. Given the testimony, you don't have any testimony - - given the evidence, you don't have any testimony that you could find such a policy so I'm thinking, okay, what's the value of your opportunity to find that out yourself, and there's just no way that the jurors have any evidence that helps them put a number on that and I'm not sure that anybody could do that. So on the four-part analysis it's causation really where the Court to overuse the analogy is planting its flag at this point and I think that requires granting the motion.

We agree with the trial court. "A plaintiff must adequately establish cause in fact in order for legal cause or 'proximate cause' to become a relevant issue." *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994). Cause in fact requires a showing that "but for" the defendant's actions, plaintiff would not have been injured. *Id.* Proximate cause "involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id.*

In this case, Dick and Walker's unrefuted testimony was that plaintiff could not have obtained an insurance policy for the property in 2012 that covered the risk of damage from an external explosion. Thus, even if Dick was negligent in his procurement of an insurance policy for plaintiff's property, no question of fact upon which reasonable minds could differ existed, based on the evidence presented at trial, concerning whether Dick's actions were a "but for"

cause of plaintiff's injuries.  Plaintiff therefore did not make out a prima facie case of proximate cause or, consequently, of negligence, and the trial court did not err in granting defendant's motion for a directed verdict.[2]

Because the trial court did not err in granting a directed verdict on proximate causation grounds, we decline to address the other elements of plaintiff's prima facie negligence case.

Affirmed.


/s/ Mark T. Boonstra
/s/ William B. Murphy
/s/ Jane E. Markey

---

[2] Our conclusion would not be altered if the trial court had admitted the proffered evidence of insurance payments made by Fremont Insurance concerning another damaged property.  As stated above, the evidence offered by plaintiff lacked information concerning the policy that covered the property, the date the policy was issued, and the circumstances surrounding the payment of the claim.  "[A] plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation."  *Skinner*, 445 Mich at 164.  Even if the jury had been presented with this evidence, and even viewing it in the light most favorable to plaintiff, the inference that plaintiff could in fact have insured the property against the peril that caused the loss would have been "impermissible conjecture" rather than a "reasonable inference."  *Id.* at 164.