*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RODNEY LEE JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
November 22, 2022

No. 356102
Berrien Circuit Court
LC No. 2019-002461-FC

Before: GLEICHER, C.J., and SERVITTO and YATES, JJ.

PER CURIAM.

Defendant, Rodney Lee Johnson, appeals as of right his jury trial conviction of second-degree criminal sexual conduct, MCL 750.520c (CSC-II). The trial court sentenced defendant, as a fourth-offense, violent or "super habitual" offender, MCL 769.12(1)(a), to 25 to 50 years' imprisonment. On appeal, defendant argues that the trial court improperly denied admission of an exculpatory video and improperly admitted evidence of prior acts at trial. He further contends that the trial court erred when it adhered to a mandatory minimum sentence of 25 years because the sentence is disproportionate and constitutes cruel and/or unusual punishment. We affirm.

This case stems from an incident in which defendant touched his step-granddaughter, CQ, in a circular motion over her vaginal area with his finger or hand, over her shorts while she was sleeping. CQ testified that she could hear defendant whispering something, but she could not understand what he was saying. As defendant left, she heard him say, "When I come back, your legs better be open." CQ told her grandmother what happened and then told her mother as well. When CQ and her mother returned to their home, CQ's mother called the police and defendant was ultimately arrested and charged as indicated. After all the evidence was presented at trial, the jury found defendant guilty of CSC-II and the trial court sentenced defendant to a mandatory minimum of 25 years' imprisonment.

Defendant moved for a new trial or, alternatively, for resentencing, arguing that the mandatory minimum sentence constituted cruel and/or unusual punishment and was disproportionate to the crime committed because the listed offense that rendered the current conviction eligible for the violent-offender enhancement happened almost 40 years earlier. The

-1-

trial court determined that "the severity of the offense and his criminal record supports the mandatory minimum sentence" and that defendant did not show that his sentence was cruel and unusual. This appeal followed.

Defendant first argues that the trial court denied defendant his right to a fair trial by denying him the opportunity to present exculpatory evidence in the form of a clip from the responding officer's body-worn camera. Defendant argues that in the video clip, CQ says the touching never happened. We disagree.

A trial court's grant or denial of an evidentiary motion is reviewed for an abuse of discretion. *People v Daniels*, 311 Mich App 257, 271; 874 NW2d 732 (2015). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). However, "[a]n error in the admission or the exclusion of evidence is not a ground for reversal unless refusal to take this action appears inconsistent with substantial justice." *People v McLaughlin*, 258 Mich App 635, 650; 672 NW2d 860 (2003).

During the jury trial, defense counsel asked CQ if she remembered whispering "nothing ever happened" while talking with the responding police officer. CQ denied making that statement. In response to this answer, defendant sought to play a clip from the officer's body-worn camera for impeachment purposes. Defendant argued that given the context, it was clear that CQ said that nothing ever happened. The trial court excused the jury and played the clip several times, after which the trial court stated that what CQ said was not discernable. The court stated, "It doesn't – it doesn't represent what you assert it does [defense counsel]. So it's irrelevant and I'm not gonna let ya use it.". The trial court further found that no context was presented to lay a foundation for admission. However, the trial court agreed to reconsider allowing the clip if it could be enhanced to hear what CQ said.

When presented with an enhanced clip the next day, the trial court found that it was still not possible to decipher what CQ was saying. Further, the trial court again pointed out that neither CQ's mother nor the officer reacted "as if she had just said what the [d]efense is trying to say this clip says," even though they were only a few feet away from her at the time. We find no error in the trial court's exclusion of the video clip.

Evidence is relevant if it tends to make a fact of consequence to the determination of the action more or less probable than it would be without the evidence. *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998); MRE 401. Relevant evidence is admissible unless otherwise stated by the rules of evidence, other rules adopted by our Supreme Court, or the United States or Michigan Constitutions. MRE 402. Further, "[e]vidence which is not relevant is not admissible." *Id*. The proponent of proffered evidence bears the burden of establishing its relevance and admissibility. *Crawford*, 458 Mich at 386 n 6.

"In the role as evidentiary gatekeeper, the trial judge must make the initial determination of whether the evidence is admissible." *Mitchell v Kalamazoo Anesthesiology*, 321 Mich App 144,

154; 908 NW2d 319 (2017). The fact-finder's role is to determine "the weight or reliability (if any) given to the evidence." *Id*. at 156. Regarding evidence proffered under MRE 613(b),[1]

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

In addition to the requirements set forth in the plain language of the rule, the party seeking to use a prior inconsistent statement against a witness must lay a proper foundation. *Barnett v Hidalgo*, 478 Mich 151, 165; 732 NW2d 472 (2007). In that case, our Supreme Court stated that to do so,

> the proponent of the evidence must elicit testimony inconsistent with the prior statement, ask the witness to admit or deny making the first statement, then ask the witness to admit or deny making the later, inconsistent statement, allow the witness to explain the inconsistency, and allow the opposite party to cross-examine the witness. [*Id*.]

What a witness's statement purports to convey may be a question of fact, and "[t]he jury, not the trial judge, is the trier of fact." *Caldwell v Fox*, 394 Mich 401, 407; 231 NW2d 46 (1975). However, the trial court must determine that the witness actually made the statement. *Howard v Kowalski*, 296 Mich App 664, 677; 823 NW2d 302 (2012), rev'd on other grounds 495 Mich 982 (2014), citing *Merrow v Bofferding*, 458 Mich 617, 631-632; 581 NW2d 696 (1998). In *Howard*, 296 Mich App at 678, the issue was whether a known statement by a known declarant was actually inconsistent with his testimony at trial. This Court held that the trial court correctly left the question of inconsistency for the jury to decide even though the trial court perceived no inconsistency. *Id*. at 679.

In this case, defendant sought to present the statement in the footage for impeachment purposes because it purportedly contradicted CQ's denial that she said the assault never happened. The trial court could not tell what CQ said at all in the footage, let alone that CQ said "nothing ever happened." Defendant asserted that a question of fact remained then regarding what, exactly, CQ said, and as a result, the matter should be left for the jury to decide. However, the trial court also voiced concerns about the lack of context in the proffered clip and potential hearsay concerns if CQ did not, in fact, state what defendant asserted. The context in which statements were made affect whether a reasonable person "would interpret the statements as asserting provable facts." *Hope-Jackson v Washington*, 311 Mich App 602, 622; 877 NW2d 736 (2015) (quotation marks and citations omitted). Because no context was provided to the trial court in this case—the trial court noted that the clip it viewed was only seconds long and, in fact, the enhanced clip provided on appeal lasted a mere one second—the trial court could not determine context for the sake of foundation. In other words, the trial court employed a reasoned approach when it came to its

---

[1] Although no rule for admission as a prior inconsistent statement was given by defendant, plaintiff correctly points out that an analysis under MRE 613(b) is applicable under the circumstances.

decision and denied its admission. Even if deemed a close call, "[a] decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001).

Further, even if the trial court incorrectly withheld the requested clip from the jury, independent viewing of the full video footage provided on appeal does not persuade us that the trial court's exclusion of the clip from evidence resulted in a substantial injustice. In the several minutes leading up to the statement in question, the officer, CQ, and CQ's mother are all standing and moving around in a kitchen. CQ can be seen fidgeting throughout the discussion and during silent moments while the officer is holding CQ's phone, looking through texts, and trying to send them to himself. This fidgeting includes playing with her shirt, touching her lower lip, having a drink of water, gently swinging her arms, looking around, lifting one leg, and playing with her fingers. Defendant flippantly describes these motions as "little dance moves," but we would certainly disagree with any assertion that the moves were made in any jovial or dance sense; rather, CQ seemed to be nervous and filling in awkward moments with movement.

When listening carefully and watching CQ's lips, it appears that CQ's first word was "nothing." The second and possibly third short words are inaudible and are made no more decipherable by watching her lips. It is obvious, however, that CQ does not say the word "happened" because her lips never came together to make a "p" sound. The enhanced clip, especially as reduced to a mere one second in length, is of no further help to a viewer.

Because the statement made by CQ on the video clip was indecipherable and presented to the trial court without context, the trial court did not abuse its discretion when it refused its admission. Further, because neither version of the footage established that CQ said what defendant asserted, the trial court's refusal to admit the footage was not inconsistent with substantial injustice.

Defendant next argues that the trial court abused its discretion when it allowed other-acts evidence of two other alleged minor victims, VS and RJ, because their claims were uncorroborated, the evidence was irrelevant and highly prejudicial, and the evidence did not meet the balancing test under MRE 403. Plaintiff sought to introduce evidence of two previous cases under MCL 768.27a, because they involved similar actions by defendant with girls of similar ages and of similar relationships as CQ. The trial court found a "remarkable similarity" between all three cases and noted that the evidence in this case would come down to a credibility battle of "he said, she said." Ultimately, the trial court found in balance that evidence of the prior incidents was admissible as "highly, highly probative."

The rule governing the admissibility of prior bad acts of sexual assault against a minor, MCL 768.27a, states as follows:[2]

---

[2] On appeal, defendant incorrectly analyzed the issue under a sister statute, MCL 768.27b. Regardless, the end result is the same, particularly when we consider this Court's statement in *Cameron*, 291 Mich App at 610, that:

(1) Notwithstanding section 27, in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

(2) As used in this section:

(a) "Listed offense" means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722.

(b) "Minor" means an individual less than 18 years of age.

Regarding the application of MCL 768.27a, "this Court has previously acknowledged that the Michigan Legislature intended to allow juries 'the opportunity to weigh a defendant's behavioral history and view the case's facts in the larger context that the defendant's background affords.' " *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011). Evidence proffered under MCL 768.27a is still subject to analysis under MRE 403. *People v Watkins*, 491 Mich 450, 481; 818 NW2d 296 (2012).

MRE 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Under MRE 403, "[e]vidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury. Therefore, MRE 403 does not prohibit prejudicial evidence; only evidence that is unfairly so." *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010) (quotation marks and citations omitted).

Analyzing whether admission of prior-bad-acts evidence is proper under MRE 403 requires a two-step inquiry:

---

because of the similarities in the language of MCL 768.27a and 768.27b, we believe that the Michigan Legislature intended the same policy to apply to domestic violence situations under MCL 768.27b. Thus, prior-bad-acts evidence of domestic violence can be admitted at trial because a full and complete picture of a defendant's history . . . tends to shed light on the likelihood that a given crime was committed. [Quotation marks and citation omitted.]

First, this Court must decide whether introduction of [defendant]'s prior-bad-acts evidence at trial was unfairly prejudicial. Then, this Court must apply the balancing test and "weigh the probativeness or relevance of the evidence" against the unfair prejudice. Upon completion of this second inquiry, this Court can determine whether the trial court abused its discretion in allowing [defendant]'s prior bad acts into evidence. [*Cameron*, 291 Mich App at 611.]

A defendant's propensity to commit a charged offense is highly relevant. *Watkins*, 491 Mich at 470. Further, a person who has compiled a substantial criminal history is more likely to have committed a crime than someone with no criminal history. *Id*. Therefore, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at 487.

However, courts must still determine whether the other-acts evidence is overly prejudicial. *Id*. The *Watkins* Court outlined six, nonexclusive factors that a trial court can consider when determining if prior-bad-acts evidence is unfairly prejudicial:

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

In this case, the trial court properly applied the *Watkins* factors when it found that introduction of defendant's prior bad acts would not be overly prejudicial. At an evidentiary hearing, the trial court found a "remarkable similarity" between this case and those involving VS and RJ, weighing in favor of introduction of the prior acts. Regarding temporal proximity, the trial court found that the gaps in time between the offenses were merely filled in with periods of defendant's incarceration. The frequency or infrequency of the incidents did not weigh toward or against admission, the trial court found. However, defendant admitted to at least one of the prior incidents and partially admitted the other, which tended to show that the evidence of the prior acts was reliable. Finally, the trial court noted that the evidence in this case would come down to a credibility battle of "he said, she said," and therefore, the prior-acts evidence would be "highly, highly probative" and not easily overcome by its prejudicial effect. After analyzing the evidence by applying the appropriate factors in *Watkins*, the trial court found that the factors weighed in favor of admitting the prior acts in question. Although prejudicial, the evidence was not unfairly so. We therefore find the trial court did not abuse its discretion when it reasoned that the evidence of defendant's prior bad acts was admissible.

Defendant next argues that the mandatory minimum sentence imposed under MCL 769.12(1)(a) violates the Michigan Constitution's prohibition of cruel or unusual punishment because it is disproportionate and does now allow for assessment of the circumstances of the case or any other individualized factors that a trial court is otherwise required to consider when imposing a fair sentence.

A trial court's sentencing decision is reviewed on appeal for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). This Court reviews issues of

constitutionality de novo. *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Id*.

MCL 769.12, which imposes sentencing enhancements to fourth-offense habitual offenders, states in pertinent part:

> (1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

> (a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years. Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.

A legislatively mandated minimum sentence is presumed to be proportional and valid. *People v Burkett*, 337 Mich App 631, 637; 976 NW2d 864 (2021). To overcome the presumption that a sentence is proportional as applied, "a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Id*. Further, "[s]entencing must be individualized and tailored to the particular circumstances of the case and the offender at the time of sentencing." *People v Triplett*, 407 Mich 510, 515; 287 NW2d 165 (1980).

Additionally, Michigan's Constitution prohibits cruel or unusual punishment. Const 1963, art 1, § 16; *Benton*, 294 Mich App at 204. This Court employs a three-part test to determine whether a sentence is cruel or unusual: "(1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states." *Benton*, 294 Mich App at 204.

In *People v Lorentzen*, 387 Mich 167, 181; 194 NW2d 827 (1972), our Supreme Court also considered the goal of rehabilitation when it held that "[a] compulsory prison sentence of 20 years for a nonviolent crime imposed without consideration for defendant's individual personality and history is so excessive that it 'shocks the conscience.' " In that case, the defendant had no criminal history and was sentenced to 20 years' imprisonment, the mandatory minimum required for selling or even giving away "any quantity of marijuana." *Id*. In *People v Bullock*, 440 Mich 15, 37; 485 NW2d 866 (1992), our Supreme Court similarly held that a life sentence without the possibility of parole for possessing 650 grams or more of a mixture containing cocaine, even for first-time offenders, was grossly disproportionate.

In *Burkett*, 337 Mich app at 642, however, this Court held that the 25-year mandatory minimum sentence under MCL 769.12(1)(a) after conviction of a *violent* crime is not facially

unconstitutional. Further, this Court specifically rejected comparisons made to the circumstances in *Lorentzen* and *Bullock*, saying that those cases

> are distinguishable from the sentence mandated by MCL 769.12(1)(a). Both *Lorentzen* and *Bullock* dealt with penalties imposed for nonviolent drug crimes, and the penalties in question did not require a showing of previous criminal activity. By contrast, MCL 769.12(1)(a) only applies to individuals convicted of a serious felony who have previously been convicted of *three or more* felonies. Thus, we find defendant's comparison of the present case to the circumstances in *Lorentzen* and *Bullock* unpersuasive. [*Id*. at 639 (citations omitted).]

This Court also squarely rejected the defendant's argument that differences between MCL 769.12(1)(a) and California's similar "Three-Strikes Law" rendered MCL 769.12(1)(a) unconstitutional. *Id*. at 640.

Because CSC-II is an assaultive offense, defendant's arguments that the standards applied in *Lorentzen* and *Bullock* should be applied in this case fail for the very reasons this Court noted in *Burkett*. Similarly, under this Court's holding in *Burkett*, defendant's reasoning that MCL 769.12(1)(a) is cruel and unusual as compared to California's "Three-Strikes Law" is equally meritless.

Notably, defendant does not argue that his criminal history is inadequate to meet the requirements of the habitual offender statute. Rather, defendant argues that, as applied, the statute imposed an unconstitutionally harsh penalty because it did not allow the trial court to consider any individualized factors normally applied when fashioning an appropriate sentence. Defendant's primary arguments in support of his position include his age at the time of the current offense as well as his age at the time of the required listed offense, unarmed robbery. Defendant argues that a 25-year minimum sentence is a de facto life sentence, given his age at 58 years old at the time of this appeal. Defendant also cites research that shows that people are much less likely to offend as they get older, and emphasizes that the sole charge in defendant's criminal history that rendered him eligible for the sentencing enhancement under MCL 769.12(1)(a), an unarmed robbery, took place 40 years earlier when defendant was only 18 years old. The age of that case combined with defendant's relative immaturity at the time, defendant argued, presented an opportunity for an individualized assessment for sentencing that was not allowed to take place in this case.

The trial court addressed the issues presented by defendant when it pointed out that defendant continued to offend throughout his adulthood, accumulating nine felonies and 19 misdemeanors. With that lengthy and continuing history, we agree that a 25-year minimum sentence is not cruel nor unusual regardless of which felony comprised the listed offense. See, e.g., *People v Bowling*, 299 Mich App 552, 559; 830 NW2d 800 (2013) (holding that the defendant's record of "seven prior felonies and nine prior misdemeanors" established "a pattern of violence and disregard for others"). Defendant's lengthy criminal history also demonstrates that rehabilitation is not a realistic goal. See *People v Powell*, 278 Mich App 318, 324; 750 NW2d 607 (2008). In balance, therefore, MCL 769.12(1)(a) is not cruel or unusual as applied to defendant's sentence.

We also find that the 25-year minimum sentence is not, as defendant claims, severely disproportionate to the gravity of the offense. The trial court found that, although it deemed its hands tied regarding defendant's minimum sentence, the sentence was proportionate when considering defendant's lengthy criminal history and the significant gravity of a third-time CSC offense against a minor.

Defendant's sentencing guidelines before the mandatory minimum called for a minimum guidelines range of 3 years to just under 12 years' imprisonment. That range represented a significant discrepancy from the minimum of 25 years required under MCL 769.12(1)(a). The calculated minimum range was driven almost solely by defendant's criminal history. The instant offense, however, generated only 10 OV points, which is relatively low for a high-severity felony such as a CSC-II. While this discrepancy could arguably present an unusual circumstance requiring further consideration, the state's interest in protecting children from sexual exploitation significantly tempers that discrepancy. In *Benton*, 294 Mich App at 205, for example, this Court upheld as a matter of public policy the 25-year minimum sentence imposed under MCL 769.12(1)(a) for a first-time offender whose offense "did not involve any force, violence, coercion, or trickery, and that the victim did not sustain physical or psychological injury."

Here, although defendant had no prior CSC convictions on his record, this was defendant's third offense that stemmed from sexually criminal actions with preteen or young-teen girls with whom he was connected through dating relationships. One of the victims was defendant's own daughter. We agree that the similarity and continuing nature of these three incidents, coupled with defendant's criminal history is sufficient to uphold the minimum sentence under MCL 769.12(1)(a). The trial court thus did not abuse its discretion by following the legislature's mandate under MCL 769.12(1)(a).

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Christopher P. Yates